# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON J. MANDEL, | |
| Plaintiff, | NO. 3:09-CV-0042 |
| v. | |
| M & Q PACKAGING CORP., | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Defendant M & Q Packaging Corp.'s Motion to Dismiss. (Doc. 6.) Plaintiff Shannon Mandel raises several claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et seq*., as well as a state law claim for intentional infliction of emotional distress. Defendant moves to dismiss certain of Plaintiff's claims under Title VII and the PHRA as well as her state law claim. For the reasons stated below, the Court will grant Defendant's motion.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and over her state law claims pursuant to 28 U.S.C. § 1367(a) ("supplemental jurisdiction").

## BACKGROUND

Plaintiff was hired by Defendant as a salesperson on October 25, 1996. In over ten (10) years of employment with Defendant, she held several positions. The title of her final position was Customer Service Manager. (Compl. ¶¶ 11, 12, 21.) In her complaint, Plaintiff

alleges that, throughout her employment, she was subjected to sexual harassment—including sexually derogatory comments, innuendoes, and solicitation by male co-workers and supervisors—and sex discrimination—including inequitable treatment, assignments, career advancement, and pay compared with male counterparts. (Compl. ¶¶13-15.) Plaintiff further alleges that, on April 6, 2007, Defendant's plant manager entered her office to discuss a work matter and screamed, accused her of wrongdoing, and called her a "bitch." Plaintiff was physically threatened by the behavior. Plaintiff alleges that on this occasion, and others, she complained to the general manager about the harassment and discrimination she suffered at the hands of Defendant's employees and officials. As a result of such complaints, she allegedly suffered further discriminatory, harassing, and physically threatening treatment. Plaintiff resigned her employment on May 23, 2007. She alleges that she was constructively terminated due to her intolerable work conditions. (Compl. ¶¶ 16-21.)

Plaintiff filed a four-count complaint on January 9, 2009. (Doc. 1.) Counts I and II allege gender-based termination, harassment, and retaliation in violation of Title VII. Count III alleges gender-based termination, harassment, and retaliation in violation of the PHRA. Count IV alleges a claim for intentional infliction of emotional distress.

Defendant filed the present motion to dismiss on March 16, 2009 and a brief in support on March 30, 2009. (Docs. 6, 8.) Defendant moves to dismiss Counts I, II, and III to the extent they raise Title VII retaliation claims and to dismiss Count IV in its entirety. Plaintiff filed a brief in opposition on April 13, 2009.[1] (Doc. 9.) Defendant filed a reply brief

---

[1] The Court notes that Plaintiff's brief in opposition to Defendant's motion violates Local Rule of Court 7.8 in several respects. First, the twenty-five

on April 27, 2009.  (Doc. 10.)  This motion has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1960 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. V. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

---

(25) page brief violates the rule by exceeding fifteen (15) pages without an accompanying certificate indicating that it does not exceed five thousand (5,000) words.  Second, it exceeds fifteen (15) pages but is not accompanied by a table of contents and table of authorities.  Third, Plaintiff failed to seek authorization of the Court to file a brief in excess of the rule's page limit.  Plaintiff's counsel is admonished to comply with the Local Rules.  In the interests of judicial economy, the Court will consider the oversized brief, but will strictly enforce Local Rule 7.8 going forward.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus.. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id*. The court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaints "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *Id*. The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I. Retaliation Claims

In Counts I and II, Plaintiff raises claims for retaliation in violation of Title VII. In Count III, she raises a claim for retaliation in violation of the PHRA. Defendant argues that the retaliation claims in Counts I, II, and III should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust the necessary administrative remedies.

Initially, the Court notes that Defendant attaches as an exhibit to its motion a copy of Plaintiff's charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC") and dated December 14, 2007. (Ex. A, Doc. 8.) Plaintiff attaches a copy of the same EEOC charge; proof of her election to dual file the charge with the Pennsylvania Human Rights Commission ("PHRC"), dated December 14, 2007; correspondence from the EEOC and the PHRC acknowledging receipt of the charges, dated March 5, 2008 and April 14, 2008, respectively; and an EEOC intake questionnaire, dated July 17, 2007. (Ex. A, Doc. 9.) This Court may review certain matters outside the complaint when considering a motion to dismiss. *See* FED. R. CIV. P. 12(b)(6). Specifically, the Third Circuit Court of Appeals has ruled that a court may also consider and take judicial notice of "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Ind., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "[i]n evaluating whether a plaintiff has exhausted her administrative remedies ... courts routinely consider the plaintiff's administrative filings as public records." *Wilson v. Phila. Hous. Auth.*, No. 06-cv-4932, 2008 U.S. Dist. LEXIS 19636, at *10 (E.D. Pa. Mar. 12, 2008). This includes related documents, such as the plaintiff's administrative agency intake questionnaire. *See, e.g., id.* at *6-*7; *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000). Therefore, the Court will consider the above-named documents and continue to treat Defendant's motion as a motion to dismiss.

### A. Counts I and II - Title VII

Prior to bringing suit for a Title VII claim in a district court, the plaintiff must exhaust

her administrative remedies. *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 885 (3d Cir. 1977). This includes the requirement of filing a charge before the EEOC. *Id*. The exhaustion requirement serves two purposes:

> First, it puts the employer on notice that a complaint has been lodged against him and gives him the opportunity to take remedial action. Second, it gives the EEOC notice of the alleged violation and an opportunity to fulfill its statutory responsibility of seeking to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

*Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983) (internal citations and quotation marks omitted). "The relevant test in determining whether [plaintiff] was required to exhaust her administrative remedies ... is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam)).

In support of her retaliation claims,[2] Plaintiff's complaint alleges that she complained to Defendant's general manager on the occasion of her April 6, 2007 encounter with the plant manager, as well as other on other occasions, regarding alleged harassment and discrimination by Defendant's employees and officials. She allegedly suffered retaliation in response to her complaints. (Compl. ¶¶ 16-20.) Plaintiff proffers the following passage from her EEOC charge in support of the argument that these allegations of retaliation are within

---

[2] The elements of a retaliation claim are as follows: (1) plaintiff engaged in conduct protected by Title VII; (2) the employer took adverse employment action against plaintiff; and (3) a causal link between the protected conduct and the employer's adverse action. *See Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir. 1994).

6

the scope of the administrative charge:

> The incident that led to my resignation was on April 6, 2007, when Ernie Bachert, Plant Manager, came into my office to discuss why orders were being held up. Mr. Bachert stood over me screaming and calling me a 'bitch,' I felt physically threatened. Jack Conway, HR Manager, heard the shouting but did not do anything about it. Mr. Conway would also make comments about me when I wore high heels. He would refer to them as 'beat me bite me' shoes. These comments were made up until the time I resigned. *If I would have said anything about the comments it would have been impossible to work there or I believe I would have been immediately terminated.*

(Ex. A, Doc. 9) (emphasis added).

The Court disagrees with Plaintiff that the factual allegations supporting the retaliation claims in her complaint are fairly within the scope of her EEOC charge. Though Plaintiff accurately notes that there is substantial factual overlap between the charge and the complaint in the instant suit as a general matter, the two contradict each other on the facts underlying the retaliation claim specifically. Plaintiff's complaint alleges she took action by complaining to the general manager and suffered consequent reprisal. Her EEOC charge indicates that she did not take action for fear of reprisal. It cannot reasonably be expected that the EEOC's investigation would encompass a claim of retaliation for engaging in statutorily protected activity where Plaintiff's charge states that she refrained from activity that might be protected, nor is there any indication that a retaliation claim was in fact investigated.

Plaintiff further argues that facts related in her EEOC intake questionnaire provide the underpinnings of her later retaliation claim and should be considered. Even if this is so, courts in this Circuit have repeatedly held that claims included in an intake questionnaire but subsequently omitted from the formal charge and not investigated do not fall within the scope

7

of the EEOC charge. *Wilson*, 2008 U.S. Dist. LEXIS 19636 at *12; *Rajoppe v. GMAC Corp. Holding Corp.*, No. 05-cv-2097, 2007 U.S. Dist. LEXIS 18956, at *22 (E.D. Pa. Mar. 19, 2007); *Johnson v. Chase Home Fin.*, 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004); *Rogan*, 113 F. Supp. 2d at 788. As explained by the *Rogan* court, the questionnaire and the formal charge serve separate purposes. 113 F. Supp. 2d at 788. Quoting the Seventh Circuit, the court noted that "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire." *Id.* at 787-88 (quoting *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80-81 (7th Cir. 1992)). The court further noted, "although allegations of retaliation appear in the questionnaire but not in the charge, it is apparent from the record that [plaintiff] received the charge, signed and dated it, and saw no reason to make any corrections to it." *Id*. at 788. Similarly here, Plaintiff signed her questionnaire on July 17, 2007, subsequently signed and dated the formal charge on December 14, 2007, and made no subsequent changes to the allegations contained in the charge.

I cannot conclude, based on the foregoing, that Plaintiff's retaliation claims are within the scope of her EEOC charge. Accordingly, I find that Plaintiff has failed to exhaust her administrative remedies as to her Title VII retaliation claims and will grant Defendant's motion to dismiss Counts I and II to the extent they allege such claims.

B.   Count III - PHRA

The PHRA has a similar requirement of exhaustion. 43 Pa. Cons. Stat. §§ 951 *et seq.; Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 919 (Pa. 1989) (holding that the PHRA requires exhaustion of administrative remedies prior to commencing an action

in court).  Furthermore, the analysis of whether a plaintiff has exhausted his or her remedies pursuant to the PHRA is identical to the analysis for exhaustion under Title VII.  *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 617 (E.D. Pa. 1999).  Count III of the complaint will therefore also be dismissed to the extent it alleges a claim for retaliation under the PHRA.

## II. Intentional Infliction of Emotional Distress Claim

In Count IV of her complaint, Plaintiff raises a state law claim for intentional infliction of emotional distress ("IIED").[3]  Defendant moves to dismiss Count IV in its entirety on grounds that it does not state an IIED claim.  Defendant argues, in the alternative, that the claim is preempted by the PHRA and/or the Pennsylvania Workers' Compensation Act, 77 Pa. Cons. Stat. §§ 1 *et seq*.

The Pennsylvania Supreme Court has never explicitly recognized IIED as a cause of action, but it has cited Restatement (Second) of Torts § 46 as setting forth the minimum elements that would be necessary to sustain such a cause of action.  *See Toney v. Chester County Hosp.*, 961 A.2d 192, 201 (Pa. Super. Ct. 2008) (citing *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)).  In addition, the Third Circuit Court of Appeals has predicted the state highest court would adopt the tort.  *Williams v. Guzzardi* , 875 F.2d 46, 51 (3d Cir. 1989). When considering a motion to dismiss an IIED claim, Pennsylvania courts apply Restatement (Second) § 46(1) as the appropriate legal standard.  *Id.* at 201 (citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 487 n.12 (Pa. Super. Ct. 2007)).

To prove a claim of IIED, the following elements must be established: (1) the conduct

---

[3] The parties appear to agree that Plaintiff's state law claim is governed by Pennsylvania law.

must be extreme in degree and outrageous in character; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. 1997). The Court must determine, in the first instance, whether the alleged conduct could reasonably be regarded as so extreme and outrageous as to permit recovery. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). To meet this standard:

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society ... [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Toney*, 961 A.2d at 202 (quoting *Reardon*, 926 A.2d at 488).

Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!" *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).

This case arises in the employment context. The Third Circuit Court of Appeals has stated "it is extremely rare to find conduct ... that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of [IIED]" *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citing *Rinehimer v. Luzerne County Cmty. Coll.,* 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)). As one district court observed, "[c]ourts routinely reject claims of [IIED] which arise out of allegedly improper employment practices, including cases of unlawful discrimination." *Timm v. Manor Care, Inc.*, No. 06-cv-0152, 2006 U.S. Dist. LEXIS 11342, at *17-18 (W.D. Pa. Mar. 20, 2006). The Pennsylvania Supreme Court has

stated the "outrageousness" threshold is so high that, typically, "'the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.'" *Hoy*, 720 A.2d at 754 (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1487 (3d Cir. 1990)).

Though Plaintiff alleges both sexual harassment and retaliatory behavior,[4] the conduct does not rise to an actionable level. Plaintiff alleges that throughout her employment she was treated inequitably compared to males in the workplace and subjected to sexually derogatory comments, innuendoes, and solicitation by male co-workers and supervisors. On at least one occasion, a male supervisor yelled at her, used profanity, and made her feel physically threatened. After complaining about her harassment, she was subjected to further harassing and physically threatening treatment. While this conduct is highly offensive and may ultimately prove actionable under federal and state employment discrimination statutes, it does not share the extreme and rare characteristics of those cases in which conduct has been found actionable. *See Pryor v. Mercy Catholic Med. Ctr.*, 1999 U.S. Dist. LEXIS 16084, *8-*9 (E.D. Pa. Oct. 15, 1999) (plaintiff was subjected to physical force, the display of genitalia, fondling, and masturbation by her supervisor and retaliation from employer for her complaints); *Merritt v. Del. River Port Auth.*, No. 98-cv-3313, 1999 U.S. Dist. LEXIS 5896, at *20-*21 (E.D. Pa. Apr. 20, 1999) (plaintiff's co-worker repeatedly exposed himself,

---

[4] Though the Court will dismiss Plaintiff's retaliation claims under Counts I, II, and III, I will consider the allegations of retaliatory conduct in the complaint for purposes of her IIED claim, as there is no exhaustion requirement for this claim similar to that imposed by Title VII and the PHRA.

11

masturbated while calling out plaintiff's name, and touched plaintiff's genitals; plaintiff's supervisors reacted to his complaints with laughter and efforts to hide the conduct); *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988) (plaintiff's employer sexually harassed her, then withheld information from her which she needed to perform her job, forbade her from talking to anyone in her office, prohibited her from answering the phone, refused to talk to her and followed her throughout the plant).

The conduct here is more akin to the circumstances of *Hoy*, in which, throughout her employment, plaintiff was harassed by her co-worker, including sexual propositions, physical contact with the back of her knee, off-color jokes, the regular use of profanity, and the posting of a sexually suggestive picture. 720 A.2d at 754-755. The court concluded that, although the record established sexual harassment and a sexually hostile work environment, it did not rise to the level of outrageousness to recover for IIED. *Id.* at 755. Unlike in *Hoy*, Plaintiff here alleges some retaliatory conduct. However, the retaliation alleged is further harassing conduct. This is unlike the extensive retaliatory conduct alleged in *Bowersox*, in which plaintiff's supervisor attempted to make her job "impossible to perform" in retaliation for her rejection of his sexual conduct. 677 F. Supp. at 311, 312. The *Bowersox* court noted, "If the only allegations supporting [plaintiff's] claim for intentional infliction of emotional distress were those concerning defendant['s] ... sexual harassment of her, the court would be forced to conclude that Count Three failed to state a claim upon which relief could be granted." *Id.* at 311.

Given the limited scope of the tort, I find that Plaintiff's allegations do not constitute the type of "clearly desperate and ultra extreme conduct" actionable under an IIED claim.

12

*Hoy*, 720 A.2d at 754. Therefore, Defendant's motion to dismiss Count IV of the complaint will be granted on grounds that Plaintiff fails to state an IIED claim. Because the count will be dismissed on these grounds, I need not reach Defendant's preemption arguments.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 6) will be granted. Counts I, II, and III of Plaintiff's complaint will be dismissed to the extent they allege claims for retaliation in violation of Title VII and the PHRA. Count IV will be dismissed in its entirety.

An appropriate Order follows.

August 18, 2009 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHANNON J. MANDEL, | |
|    Plaintiff | NO. 3:09-CV-0042 |
|        v. | |
| M & Q PACKAGING CORP., | (JUDGE CAPUTO) |
|    Defendant. | |

## ORDER

**NOW**, this ___18th___ day of August, 2009 **IT IS HEREBY ORDERED THAT** :

(1) Defendant M & Q Packaging Corp.'s Motion to Dismiss (Doc. 6) is **GRANTED**.

(2) Counts I and II of Plaintiff Shannon Mandel's Complaint (Doc. 1) are **DISMISSED** to the extent they allege claims for retaliation in violation of Title VII of the Civil Rights Act of 1964.

(3) Count III of Plaintiff's Complaint (Doc. 1) is **DISMISSED** to the extent it alleges a claim for retaliation in violation of the Pennsylvania Human Relations Act.

(4) Count IV of Plaintiff's Complaint (Doc. 1) is **DISMISSED**.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge